UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| VIOLA KEITH, | Civil Action No. 12-4172 (ES) |
|---|---|
| Plaintiff, | OPINION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**SALAS, DISTRICT JUDGE**

Before the Court is an appeal filed by Viola Keith ("Plaintiff" or "Ms. Keith") seeking review of the Administrative Law Judge's ("ALJ") decision denying Ms. Keith's application for supplemental social security income and disability insurance benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-85. The Court has considered the submissions in support of and in opposition to the present appeal, (D.E. Nos. 12, 14, 15), in addition to the administrative record, and decides the matter without oral argument pursuant to Fed. R. Civ. P. 78(b). The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, the Court VACATES the Commissioner's decision and REMANDS for further administrative proceedings consistent with this Opinion.

**I.     Background**

Plaintiff alleged that her disability commenced on January 5, 2007. (D.E. No. 9, Administrative Record, ("Record") at 114-121). On June 18, 2007, Plaintiff was diagnosed with hypothyroidism after undergoing a thyroid examination at Eva's Medical Clinic. (Record at 220). On December 12, 2007, Plaintiff went to the emergency room at St. Joseph's Medical

Department and her abdomen was noted as distended. (*Id.* at 297). During the December 12, 2007 diagnosis, Plaintiff's hypertension and hypothyroidism history was noted. (*Id.* at 300).

On February 13, 2008, Plaintiff was evaluated by Dr. Waldemar Silva ("Dr. Silva") for chest pain. (*Id.* at 311). Dr. Silva noted that "Plaintiff's medical history was remarkable for hypertension and hypothyroidism." (*Id.*) Dr. Silva admitted Plaintiff to the hospital for acute coronary syndrome. (*Id.* at 292). On March 12, 2008, Dr. Silva treated Plaintiff, diagnosed Plaintiff with hypothyroidism, and prescribed medication. (*Id.* at 251). Between April 9, 2008 and March 4, 2009, Plaintiff continually followed up with Dr. Silva and Dr. Silva increased Plaintiff's medications. (*Id.* at 246-48, 306).

On March 6, 2009, Yvonne Li ("Dr. Li"), a state agency medical consultant, completed a physical residual functional capacity assessment. (Record at 262-69). Dr. Li found that Plaintiff could perform less than a full range of light work and that Plaintiff's hypothyroidism was controlled. (*Id.* at 263).

On June 9, 2009, Plaintiff went to St. Joseph's Hospital for treatment for dizziness and a headache. (*Id.* at 274). Plaintiff underwent a computerized tomography scan of her brain, which resulted in a normal diagnosis. (*Id.* at 278-79). Plaintiff continued to see Dr. Silva to follow up with treatment. (*Id.* at 333, 336, 337). On September 24, 2009, Dr. Silva treated Plaintiff's headaches. (*Id.* at 336).

On February 2, 2010, Plaintiff followed up with Dr. Silva regarding the hypothyroidism. (Record at 331). During the follow-up, Dr. Silva noted that Plaintiff's thyroid stimulating hormone was high. (*Id.* at 331). On March 29, 2010, Dr. Silva diagnosed Plaintiff with hypothyroidism, hypertension, headaches, and prescribed Plaintiff with additional medication. (*Id.* at 308). On May 5, 2010, Dr. Silva completed Plaintiff's State of New Jersey Division

Family Development examination report. (*Id.* at 323). In the examination report, Dr. Silva noted that Plaintiff's hypothyroidism and hypertension resulted in Plaintiff's incapacity to comply with the Work First New Jersey Program. (*Id.* at 323-324). Dr. Silva noted that the length of Plaintiff's disability would be more than ninety days but less than six months. (Record at 324). Between May 7, 2010 and July 6, 2010, Plaintiff continued to see Dr. Silva regarding Plaintiff's hypertension, hypothyroidism and headaches. (*Id.* at 330, 328, 329).

On June 20, 2008, Plaintiff filed an application for disability insurance benefits and supplemental security income disability benefits. (Record at 114-121). The claims were denied initially on July 25, 2008, and again upon reconsideration on March 6, 2009. (*Id.* at 53-62). On April 7, 2009, Plaintiff filed a written request for a hearing. (*Id.* at 76-77). At the July 7, 2010 hearing, Plaintiff testified that she was unable to work due to thyroid and back problems. (*Id.* at 30-48). Plaintiff also testified about headaches, weight loss and additional alleged limitations. (*Id.*)

On July 21, 2010, Administrative Law Judge O'Leary ("ALJ") found that Plaintiff had severe impairments relating to hypothyroidism, hypertension, and back disorder. (Record at 20). Despite this finding, the ALJ denied Plaintiff's application, finding that she was not disabled. (*Id.* at 23-24). On September 10, 2010, Plaintiff filed a Request for Review from the Appeals Council, seeking review of ALJ O'Leary's decision. (*Id.* at 10). On May 8, 2013, Dr. Silva sent the Appeals Council a State of New Jersey Division of Family Services examination report that noted Dr. Silva's diagnoses of Plaintiff, statements of Plaintiff's work limitations and an opinion of the length of Plaintiff's disability. (*Id.* at 344-45). On May 18, 2012, the Appeals Council denied the appeal and informed Plaintiff that should she disagree with this decision, she may file

3

a civil action. (*Id.* at 1-5). On July 9, 2012, Plaintiff commenced the instant action. (D.E. No. 1).

II. **Legal Standard**

A. **Standard of Review**

The Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision if it is "supported by substantial evidence." 42 U.S.C. § 405(g) (2012). Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In reviewing the ALJ's decision, where there is conflicting evidence, the Commissioner "must adequately explain his reasons in the record for rejecting or discrediting competent evidence." *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)). Also, the Court is bound by the ALJ's findings that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1990). Thus, this Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

B. **Determining Social Security Benefits**

To qualify for Social Security benefits, the claimant must first establish that she is "disabled." 42 U.S.C. § 1381 (2012). "Under the Social Security Act, a disability is established where the claimant demonstrates that there is some medically determinable basis for an impairment that prevents [her] from engaging in any substantial gainful activity for a statutory

4

twelve-month period." *Fargnoli v. Halter*, 247 F.3d 34, 38-39 (3d Cir. 2001) (internal citations and quotations omitted). A claimant is disabled for these purposes only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A) (2012). A physical or mental impairment is an "impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42. U.S.C. § 423(d)(3).

The Social Security Administration has established the following five-step, sequential evaluation process to determine whether an individual is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled . . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . .
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you

are not disabled. If you cannot make an adjustment to other work,
we will find that you are disabled . . . .

20 C.F.R. § 416.920(a)(4) (2013).

### C. Burden of Proof

The five-step sequential evaluation process involves a shifting burden of proof. *See Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983). At step one, the claimant has the burden of establishing that she has not engaged in "substantial gainful activity" since the onset of the alleged disability and at step two that she suffers from a "severe impairment" or "combination of impairments." 20 C.F.R. § 416.920(a)-(c). If the claimant is able to demonstrate both that she has not engaged in substantial gainful activity and that she suffers from a severe impairment, the claimant must then demonstrate—at step three—that her impairments are equal to or exceed one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(d). If she is able to make this showing, then she is presumed disabled. 20 C.F.R. § 416.920(a)(4)(iii). If she cannot show that she meets or exceeds a listed impairment, at step four she must show that her residual functional capacity ("RFC") does not permit her to return to her previous work. 20 C.F.R. § 416.920(e)-(f). If the claimant meets this burden, then at step five the burden shifts to the Commissioner to demonstrate that the claimant can make an adjustment to other work. 20 C.F.R. § 415.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the Commissioner cannot show that the claimant can make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. § 416.920(a)(4)(i).

### III. Discussion

On appeal, Plaintiff argues that the ALJ "erred at step 2 by failing to find Plaintiff's headaches severe." (D.E. No. 12, Plaintiff's Memorandum of Law ("Pl.'s Br.") at 14). Second, Plaintiff argues that the ALJ's finding of residual functional capacity is unsupported by

6

substantial evidence. (*Id.* at 18). Furthermore, Plaintiff alleges that the ALJ's credibility determination is unsupported by substantial evidence. (*Id.* at 23). Lastly, Plaintiff argues that the ALJ's Step 5 determination is unsupported by substantial evidence. (*Id.* at 27). Accordingly, Plaintiff requests that this Court vacate the ALJ's ruling and remand for further administrative proceedings. (Pl. Br. at 29).

### A. ALJ's Finding on the Severity of Plaintiff's Headaches

Under Step Two of the SSA's five-step disability evaluation, the ALJ considers the medical severity of Plaintiff's impairments. 29 C.F.R. § 416.920(a)(4)(ii) (2013). If Plaintiff does not have "a severe medically determinable physical or mental impairment that meets the duration requirement in Section 416.909, or a combination of impairments that is severe and meets the duration requirement," the ALJ will not find that the Plaintiff is disabled. *Id.*

Under the Code of Federal Regulations, an impairment is severe if it "significantly limits [a person's] physical or mental capacity to perform basic work activities." 20 C.F.R. § 404.1520(c). When the Commissioner evaluates a medical impairment and the extent of the impairment's limitation on an individual's capacity to work, the Commissioner must consider "all reasonable evidence . . . including statements from [the claimant] . . . the claimant's history, laboratory findings, statements from treating and non-treating sources, and treating and non-treating medical opinions." *De La Cruz v. Astrue*, 2011 U.S. Dist. LEXIS 88463, at *18 (D.N.J. Aug. 10, 2011) (internal citations and quotation marks omitted). However, the claimant's impairment is not severe if it does not significantly limit the claimant's physical or mental ability to do basic work activities. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004).

Plaintiff argues that "the ALJ erred when he failed to find Plaintiff's headaches a severe impairment." (Pl. Br. at 14). Specifically, Plaintiff alleges that the record shows that Plaintiff's

7

headaches were severe and the ALJ failed to consider the "limitations stemming from this impairment throughout his decision." (Pl. Br. at 15). In response, Defendant argues that while Plaintiff provided evidence for her headaches, Plaintiff failed to show "that her headaches limited her ability to function." (D.E. No. 14, Defendant's Brief ("Def. Br.") at 4).

The Court finds that the ALJ correctly found that the Plaintiff's headaches were not a severe impairment. The burden is on the plaintiff to provide evidence demonstrating the medical severity of her impairment. *Rivera v. Comm'r of Soc. Sec.*, 164 F. App'x 260, 262 (3d Cir. 2006). While Plaintiff stated that she experienced headaches and received medication for her headaches, the record does not show that Plaintiff was limited by these headaches. The ALJ considered Plaintiff's clinical records on June 2009 and found that the diagnosis was an "acute headache" and identified no limitations arising from that headache. (Record at 21). Furthermore, the ALJ found that the "CT scan of the brain was normal" and "[n]o immediate needs were identified." (Record at 21, 228, 280). As such, the Court is not persuaded by Plaintiff's contention and affirms the ALJ's finding that Plaintiff's headaches were not a severe impairment.

### B. ALJ's Residual Functional Capacity Finding

The ALJ must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of her relevant past work. 20 C.F.R. § 416.920(a)(4)(iv). A claimant's residual capacity is "the most [an individual] can still do despite [the individual's] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must assess the RFC "based on all relevant evidence in [the individual's] case record." *Id.*

If the ALJ decides to "reject any evidence, medical or otherwise, he must provide reasons for the rejection to enable meaningful judicial review." *Harris v. Comm'r of Soc. Sec.*, No. 11-

2961, 2012 U.S. Dist. LEXIS 140308, at *19 (D.N.J. Sept. 27, 2012) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 122 (3d Cir. 2000)). If there is contradictory evidence, "the ALJ must resolve the discrepancy and provide a full explanation to support that resolution." *Id.* (citing *Burnett*, 220 F.3d at 121-22).

Plaintiff claims that the ALJ erred in affording some weight to Dr. Yvonne Li, the state agency consultant's opinion. (Pl. Br. at 20-23). Specifically, Plaintiff asserts that Dr. Li's opinion was contrary to the objective evidence, Dr. Li's opinion failed to take into account that Plaintiff's impairments became worse over time, and that the ALJ implicitly assigned greater weight to the opinion of Dr. Li, a non-examining physician, over Dr. Silva, a treating physician. (*Id.*)

In response, Defendant asserts that Dr. Li's opinion was based on her condition's response to medication, that the record showed that "Plaintiff continued to have at most mild symptoms and limitations," and that the ALJ did not implicitly give greater weight to Dr. Li's opinion. (Def. Br. at 9-10).

The Court finds that the ALJ incorrectly weighed the opinions of Dr. Li, the agency medical consultant. "Where the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, an ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason." *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) (citations omitted). Dr. Silva and Dr. Li provided contradictory evidence of Plaintiff's condition. While Dr. Li stated that Plaintiff's hypothyroidism was under control, Dr. Silva increased Plaintiff's thyroid medication due to Plaintiff's "very high thyroid stimulating hormones." (*Compare* Record at 263-264 *with* Record at 328).

The ALJ, however, failed to state which position it took and how much weight the ALJ assigned to both the treating physician and the non-examining physician. The "ALJ must consider every medical opinion and decide how much weight to give the opinion." *Sullivan v. Comm'r of Soc. Sec*, 2013 U.S. Dist. LEXIS 160033, at *18 (D.N.J. Nov. 8, 2013). "An ALJ errs by failing to address evidence in direct conflict with his findings." *Id.* Since the ALJ failed to adequately address the weight the ALJ assigned to Dr. Silva and Dr. Li, this Court remands for the resolution of this conflict.

Next, Plaintiff argues that the ALJ erred in failing to state what specific weight was afforded to Dr. Silva. (D.E. No. 12 at 19). Plaintiff specifically alleges that the ALJ's statement that it gave "'some weight to the [S]tate agency medical consultant who opined that [Plaintiff] could perform less than a full range of light work,' . . . provides no indication as to the weight assigned to Dr. Silva." (*Id.*) Defendant counters that Plaintiff's claim is meritless because "the evidence Plaintiff seeks to rely on was unsupported, internally inconsistent, and of little evidentiary value." (Def. Br. at 8).

The Court agrees with Plaintiff. The ALJ failed to properly provide evidence of the specific weight afforded to the treating physician, Dr. Silva. Under the substantial evidence test, an ALJ must "sufficiently explain[] the weight he has given" to probative evidence. *Palisay v. Comm'r of Soc. Sec.*, 2012 U.S. Dist. LEXIS 108121, at *20 (D.N.J. Aug. 2, 2012). After giving "some weight to the agency medical consultant" at Step Four, the ALJ determined that "the evidence does support a finding that the claimant does have some addition [sic] limitations, which reduce her to sedentary work." (Record at 22). However, the ALJ provides no explanation to support this determination. The ALJ simply summarily states that he has only

provided "some weight" and failed to provide any explanation on the amount of weight given to Dr. Silva's opinion. (*See* Record at 22).

Defendant argues that "there is no clear basis for either of Dr. Silva's assessment that Plaintiff was disabled." (Def. Br. at 9). However, the ALJ's decision fails to provide such reasoning in its opinion. (*See* Record at 22). Courts cannot accept counsel's "post hoc rationalization for agency action." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). To uphold an agency action, the agency's rationale must be upheld "on the basis articulated by the agency itself." *Id.* Thus, on remand, the ALJ must articulate the amount of weight given to Dr. Silva's opinion.

### C. The ALJ's Credibility Determination

To determine Plaintiff's residual functional capacity, the ALJ must consider all the evidence in the record. *Burnett*, 220 F.3d at 121. If the ALJ weighs the credibility of the evidence, the ALJ "must give some indication of the evidence which he rejects and his reasons for discounting the evidence." *Id.*

Plaintiff argues that the ALJ's credibility determination is unsupported by substantial evidence because the ALJ erred in considering the required factors when assessing Plaintiff's credibility. (Pl. Br. at 23). Specifically, Plaintiff argues that the ALJ erred in four ways.

First, Plaintiff argues that the ALJ did not fully consider Plaintiff's testimony. *Id.* at 24-27. In response, Defendant contends the ALJ did not ignore Plaintiff's testimony because "it is clear that the ALJ simply did not find such testimony credible." (Def. Br. at 11). The Court finds that the ALJ failed to sufficiently consider Plaintiff's testimony. Plaintiff claimed that she experienced dizziness and was unable to engage in daily activities. (Record at 42-43). Also, Plaintiff claimed that she could only lift three pounds. (Record at 41). Furthermore, Plaintiff

asserted that her daughter completes most of her shopping and helps Plaintiff with her laundry. (Record at 43). While Defendant is correct in that the "ALJ is entitled to reject a claimant's testimony if he finds they lack credibility, [the ALJ's] decision to do so must contain a thorough discussion and analysis of the objective medical and the other evidence." *Gibson v. Astrue*, 2013 U.S. Dist. LEXIS 37390, at *18 (D.N.J. Mar. 18, 2013).

Second, Plaintiff asserts that the ALJ offered an explanation contrary to the evidence on the duration of Plaintiff's hypothyroidism and the efficacy of Plaintiff's medication. Plaintiff acknowledges the ALJ's determination that no medical evidence supports a finding that Plaintiff's hypothyroidism is expected to last for a year. (Pl. Br. at 24-25). However, Plaintiff specifically points out evidence that Plaintiff's hypothyroidism lasted for more than three years. (Pl. Br. at 25). In opposition, Defendant asserts that the ALJ's explanation on the duration of Plaintiff's hypothyroidism was not contrary to the record. (Def. Br. at 12).

The Court agrees with Plaintiff. ALJs are required to "provide some explanation for a rejection of probative evidence which would suggest a contrary disposition." *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994). If the ALJ "fails to acknowledge the existence of such contradictory evidence," the Court must remand the ALJ's decision. *Gibson*, 2013 U.S. Dist. LEXIS 37390, at *28-29.

Third, Plaintiff argues that the ALJ similarly offered an explanation contrary to the efficacy of Plaintiff's medication. Specifically, Plaintiff contends that the ALJ mistakenly concluded that Plaintiff's hypothyroidism was correctable with medication, while Dr. Silva's medical record indicated continuing problems with Plaintiff's thyroid-stimulating hormones and prescribed increased medication. (Pl. Br. at 25). Defendant, in conclusory fashion, asserts that Plaintiff "conflates her subjective complaints with actual medical facts substantiated by the

12

records" and that Plaintiff's medical diagnosis "does not follow that her limitations were as severe as she alleged." (Def. Br. at 12). "While the ALJ is entitled to make a credibility determination, he may decide to reject [medical opinions] outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Gibson*, 2013 U.S. Dist. LEXIS 373390, at *18 (citations and internal quotations omitted). The ALJ failed to put forth contrary medical evidence that rebuts Dr. Silva's diagnosis. (Record at 22). Thus, this Court finds that the ALJ erroneously rejected Dr. Silva's medical opinion.

Lastly, Plaintiff argues that the ALJ did not articulate his reasons for discrediting Plaintiff's subjective testimony. (*Id.* at 24-27). In response, Defendant asserts that the ALJ "was not obligated to accept Plaintiff's testimony . . . without question and had the discretion to evaluate Plaintiff's credibility in light of the evidence in the record." (Def. Br. at 25 (citations omitted)). However, courts "need from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected. In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981). Here, the Court finds that the ALJ failed to articulate reasons for discrediting Plaintiff's testimony. As such, the matter is remanded for further administrative proceedings. On remand, the ALJ must properly consider Plaintiff's testimony and offer sufficient explanation for its conclusions.

### D. ALJ's Step Five Determination

In Step Five, the ALJ must consider its assessment of the plaintiff's residual functional capacity and experience to see if the plaintiff can make an adjustment to other work. 20 C.F.R. §

416.920(a)(4)(v). If the plaintiff cannot make an adjustment to other work, the ALJ will find that the plaintiff is disabled. *Id.* To determine whether a successful adjustment to other work can be made, the ALJ must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, also known as the grid. 20 C.F.R. § 416.969; *see also Nerahoo v. Colvin*, 2013 U.S. Dist. LEXIS 168310, at *17 (Nov. 26, 2013). If the impairment is primarily exertional and no severe nonexertional impairments exist, the ALJ is permitted to simply use the grid to determine work capacities. *Green v. Schweiker*, 749 F.2d 1066, 1071 (3d Cir. 1984).

However, when a claimant has a combination of severe exertional and nonexertional impairments, or solely severe nonexertional impairments, "the grids cannot automatically establish that there are jobs in the national economy." *Sykes v. Apfel*, 228 F.3d 259, 267 (3d Cir. 2000). In cases of severe nonexertional impairments, the ALJ must use both the "testimony of a vocational expert or other similar evidence" and the grid to determine if there are jobs in the national economy that the claimant can perform. *Id.* at 273. If the ALJ does not take the testimony of a vocational expert or the like in these situations, the ALJ must "[provide] notice to the claimant of his intention to take official notice of this fact (and [provide] the claimant with an opportunity to counter the conclusion)." *Id.* at 261.

Plaintiff argues that "the ALJ's Step 5 determination is unsupported by substantial evidence because, due to Plaintiff's significant non-exertional impairments, the testimony of a vocational expert ("VE") was necessary." (Pl. Br. at 27) Specifically, Plaintiff asserts that the ALJ failed to find the impact of the pain and dizziness of Plaintiff's headaches. (*Id.* at 28). However, as this Court noted previously, the ALJ was correct in finding that Plaintiff's headaches were not a severe impairment. When substantial evidence exists to support the ALJ's

14

finding that Plaintiff had no severe nonexertional impairments, the "determination of disability is possible by applying the grids without reference to additional evidence." *Cartagena v. Comm. of Soc. Sec.*, 29 F. App'x 883, 884-85 (3d Cir. 2002). Accordingly, the ALJ was not required to use vocational expert testimony at Step Five.

**IV.     Conclusion**

For the reasons discussed above, the Court finds that the ALJ's determination is not supported by substantial evidence. As a result, the Court vacates the ALJ's decision and remands the matter for further proceedings consistent with this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**